CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
August 24, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| Andre Curtis Wilkins,<br>Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 7:24-cv-00093 |
| v. | ) | |
| | ) | |
| Investigator K. Rasnake *et al.*,<br>Defendants. | ) | |

# MEMORANDUM OPINION

Plaintiff Andre Curtis Wilkins, a Virginia prisoner proceeding *pro se*, brought this action under 42 U.S.C. § 1983 alleging violations of his constitutional rights that arose when he was incarcerated at Keen Mountain Correctional Center. (Dkt. 1.) The court issued an order dismissing all of plaintiff's claims except his claim that defendants C. Dye and K. Rasnake retaliated against Wilkins for his failure to cooperate with an investigation by fabricating a false disciplinary report against him. (Dkts. 59, 61.) Now before the court is defendants' motion for summary judgment. (Dkt. 91.) Plaintiff responded to the motion, (Dkt. 100), and he also filed a motion to compel discovery, (Dkt. 94). Defendants filed a reply brief. (Dkt. 103.)

For the reasons stated below, defendants' motion for summary judgment will be granted, plaintiff's motion to compel will be denied, and this matter will be dismissed in its entirety.[1]

[1] The court notes that it issued an order directing the remaining defendants to file a motion for summary judgment or a notice stating that they do not intend to file a summary judgment motion "at this time." (Dkt. 61.) Pursuant to that order, defendants filed a notice stating that they "do not intend to file a Motion for Summary Judgment at this time." (Dkt. 74.) The court then set this matter for trial and issued a trial scheduling order. (Dkt. 79.) Wilkins objects to defendants' motion for summary judgment on the grounds that they initially indicated that they would not be filing such a motion. (Dkt. 100.) However, the trial scheduling order set a deadline for filing dispositive motions, including any motion for summary

# I. BACKGROUND

## A. Plaintiff's Allegations

In a verified complaint, Wilkins describes an incident on July 21, 2023, involving multiple gang members, where an inmate was stabbed. (Dkt. 1 ¶¶ 15–20.) During the investigation, Wilkins was removed from his cell and taken to Unit Manager C. Dye's office. Wilkins explained to defendants K. Rasnake and C. Dye that he "was not involved in the incident" and did not want to be involved the investigation. He stated, "I was on the bottom tier the entire time, I had nothing to do with it." (*Id.* ¶¶ 21–22.) Rasnake and Dye "constantly" told Wilkins if he did not tell them what he saw or heard, then they were going to make his bruised lip and broken arm[2] looked like he was "involved" and Wilkins was going to "wear" the consequences of the stabbing incident. (*Id.* ¶ 23.)

Wilkins got frustrated and asked, "how can I wear something I didn't do and my arm and lip has nothing to do with what happened, the max pro pod camera is clear proof." (*Id.* ¶ 24.) Dye responded by saying "we don't care about the camera, if we say you did, then you did it and you gonna wear it." Rasnake agreed with Dye's comment and "repeated it with seriousness." (*Id.* ¶ 25.)

According to Wilkins, on July 28, 2023, Rasnake fabricated a disciplinary report against Wilkins, stating that Wilkins entered cell B343 to block the doorway to ensure that inmate

judgment pursuant to Fed. R. Civ. P. 56, (Dkt. 79 ¶ 6), and defendants' motion was timely pursuant to that order. Accordingly, the motion for summary judgment is properly before the court.

[2] Wilkins does not explain the origin of these injuries.

Saunders could not get out of the cell. Wilkins was charged with aiding and abetting another to commit aggravated assault. (*Id.* ¶¶ 35–37.)

Wilkins was found guilty after a disciplinary hearing. (*Id.* ¶ 39.) The charge was dismissed on appeal. (*Id.* ¶ 62.)

**B. Facts in Support of Motion for Summary Judgment**

In support of their motion for summary judgment, defendants provide affidavits and an Incident Report from July 21, 2023. (Dkts. 92-1, 92-2, 92-3, 102.)

Multiple inmates entered cell B343 on July 21, 2023, and attacked the inmate residing in that cell. (Rasnake Aff. ¶¶ 7–9.) When staff were notified of the attack, the pod was placed on lockdown and an investigation commenced. (*Id.* ¶ 6.) Investigator Rasnake and Unit Manager Dye investigated the attack. (*Id.* ¶ 8.)

Rasnake and Dye received information from two confidential informants about the identity of the perpetrators of the attack. (*Id.* ¶ 8.) One of the confidential informants submitted a written statement to defendants. (*Id.*, Encl. A.) The informant stated that he saw the attack take place and that Wilkins blocked the door to the cell. (*Id.*)

After receiving information from two confidential informants and reviewing the MAXPRO video footage, defendants determined that Wilkins was part of the attack. (*Id.* ¶ 8.) Accordingly, Wilkins was charged for his role in the attack. (*Id.*, Encl. B (Charge for Aiding and Abetting Another to Commit Aggravated Assault).)[3] Both Dye and Rasnake maintain that they did not issue the aiding and abetting charge in retaliation for Wilkins not cooperating with the investigation. (Dye Aff. ¶ 7; Rasnake Aff. ¶ 9.)

[3] Wilkins was also charged with possession or use of a weapon. (Horne Aff., Encl. A.)

**C. Wilkins' Response to Defendants' Motion for Summary Judgment**

In response to the motion for summary judgment, Wilkins filed a verified response and a separate affidavit. (Dkts. 100, 100-1.)

Wilkins claims that "the camera will show I was not around that incident," but Dye and Rasnake "both continued to make threats to me that was retaliatory." (Wilkins Aff. ¶ 4.) "I did not block the doorway of B343 . . . . I was nowhere around the incident, which occurred on the top [tier]. I was on the bottom [tier] VERY far away from the altercation and individuals seen on camera. Investigator K. Rasnake [fabricated] her report due to her and C. Dye retaliation." (*Id.* ¶ 7.) Also, "K. Rasnake disciplinary offense report against me was eventually dismissed due to it being falsified." (*Id.* ¶ 8.)

Wilkins argues that defendants have refused to comply with his request for the full video footage by "not providing both of B3 pod camera evidence from 6:05 am to 6:35 am. They only started the video at 6:17 am, 12 minutes off so the plaintiff couldn't be seen of having no involvement in the stabbing." (Dkt. 100 at 2.) Wilkins continues:

> The plaintiff also requested Body Camera evidence from 6:05 am to 6:35 am on the date of the stabbing, so he can PROVE the misconduct of the defendant's, who continue to lie about their retaliation towards the plaintiff. The defendants only provided the body camera footage from 6:08 am to 6:13 am (5 mins). The FULL footage to 6:35 am will clearly identify the plaintiff of having absolutely no involvement. The plaintiff respectfully request that the court take the misbehavior of the defendants misconduct with evidence in light favorable to the plaintiff.

(*Id.*) Wilkins further states that the "falsified charge was eventually dismissed due to it being made up and now the defendants are trying to get out of hot water by continuing to lie to the

court and present untrue affidavits, declarations, etc. in bad faith only to delay this civil action." (*Id.* at 4.)

In describing his claim, Wilkins states that he "exercised his right to freedom of speech by stating he did not want to be involved in defendants Dye and Rasnake investigation, the defendants threatened Wilkins with a falsified disciplinary report out of retaliation." (Dkt. 100 at 8.)

### D. Plaintiff's Motion to Compel

In his motion to compel, Wilkins requests an order that defendants produce the following: (1) the recording of his disciplinary hearing; (2) for the two confidential informants to testify in front of the jury; (3) any history or complaints made on defendants concerning claims of retaliation; (4) all emails related to plaintiff and the incident relevant to this complaint; and (5) the names, inmate numbers, and facility location of all inmates placed in segregation for the stabbing incident. (Dkt. 94.)

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). When ruling on a summary judgment motion, the court should

consider the parties' pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *Celotex Corp.*, 477 U.S. at 322. "The nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 783 (4th Cir. 2021) (quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015)).

**B. Plaintiff's Remaining Claim**

The only claim remaining in this case is Wilkins' claim that Dye and Rasnake violated due process by being involved ("playing a roll") with Rasnake filing a false charge against him. (Dkt. 1 ¶¶ 85, 86.) As the court has explained, the filing of a false disciplinary report or charge generally does not state a constitutional claim. *Cole v. Holloway*, 631 F. App'x 185, 186 (4th Cir. 2016); *Allen v. Norvell*, Case No. 7:21-cv-00213, 2022 WL 4479225, at *5 (W.D. Va. Sept. 27, 2022). However, this type of claim can be viable if the charge was retaliatory. *See id.* The court liberally construed Wilkins's complaint (*see* Dkt. 59 at 14) and found that he plausibly alleged that Dye and Rasnake retaliated against Wilkins for his failure to cooperate with the investigation by fabricating a false disciplinary report against him. *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *see also Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988) (finding that prisoner stated a claim based on false disciplinary charges against him in retaliation for cooperation with an investigation into inmate abuse).

The premise of the cases cited by the court is that the filing of false disciplinary charges can be actionable if they are brought in retaliation for the exercise of a constitutional right. *See Harper v. Rudek*, No. CIV-12-449-HE, 2013 WL 1679986, at *3 (W.D. Okla. Feb. 8, 2013) ("In

some circumstances, false disciplinary charges can amount to a violation of substantive due process if the charges were brought in retaliation for the exercise of a constitutional right.") (citing *Sprouse*, 870 F.2d at 452); *see also O'Bryant v. Finch*, 637 F.3d 1207, 1212 n.10 (11th Cir. 2011) (noting that "[s]ome courts appear to describe the type of retaliation claim here—filing false disciplinary charges in retaliation for the inmate's grievances—not as a First Amendment retaliation claim but as a substantive due process claim"). In *Sprouse*, the court found that the filing of a false disciplinary charge against an inmate was actionable because it was done in retaliation for pursuing a grievance. "Prison officials cannot properly bring a disciplinary action against a prisoner for filing a grievance that is determined by those officials to be without merit anymore than they can properly bring a disciplinary action against a prisoner for filing a lawsuit that is judicially determined to be without merit." *Sprouse,* 870 F.2d at 452. In *Franco*, the court found that "intentional obstruction of a prisoner's right to seek redress of grievances" is the type of conduct meant to be remedied by § 1983. *Franco,* 842 F.2d at 589. A prisoner "should not be any less entitled to relief under section 1983 because he was addressing his complaints to a state administrative agency rather than to a court of law." *Id.* at 589–90.

In contrast to these cases, Wilkins frames his claim as being given a false disciplinary charge in retaliation for refusing to participate in an investigation. Unlike cases where a false charge was filed due to a prisoner's pursuit of a grievance or a lawsuit, refusal to participate in an investigation is not a constitutional right. The elements of a retaliation claim are: (1) the plaintiff engaged in constitutionally protected activity, (2) the defendants took some action that adversely affected his constitutional rights, and (3) there was a causal relationship between

the protected activity and the defendants' conduct. *Williams v. Stone*, Civil No. 2:22-cv-00388, 2025 WL 2550534, at *5 (E.D. Va. Sept. 4, 2025) (citing *Williams v. Mitchell*, 122 F.4th 85, 89 (4th Cir. 2024)). Under the first element, Wilkins has not engaged in any activity protected by the constitution. There is no "constitutional right not to cooperate in an investigation" arising under the First Amendment.[4] *Collins v. Jones*, No. 11-CV-315, 2011 WL 2883482, at *2 (N.D. Okla. July 15, 2011). An inmate's refusal to assist in the investigation of a prison security violation is not protected speech. *Mejia v. Adams*, No. 1:25-cv-01453, 2026 WL 561143, at *2 (C.D. Ill. Feb. 27, 2026) (citing *Caffey v. Maue*, 679 F. App'x 487, 490 (7th Cir. 2017)); *see also Clardy v. Mullens*, No. 12-cv-11153, 2012 WL 5188012, at *7 (E.D. Mich. Oct. 19, 2012) (collecting cases holding that the act of refusing to provide information about fellow inmates is not protected conduct under the First Amendment). Wilkins also cannot claim a right under the Fifth Amendment because a "violation of the constitutional right against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case." *Chavez v. Martinez*, 538 U.S. 760, 770 (2003). Wilkins was not asked to provide evidence against himself. Thus, defendants are entitled to summary judgment on plaintiff's claim that they retaliated against him because of his refusal to assist in their investigation of past events.

Wilkins' claim also fails under the causal relationship element, which implicates the "burden-shifting framework of the same-decision test." *Shaw v. Foreman*, 59 F.4th 121, 130

---

[4] Notably, the Second Circuit has recognized a limited "right not to snitch" in *Burns v. Martuscello*, 890 F.3d 77 (2d Cir. 2018). In *Burns*, the Second Circuit, as a matter of first impression, found a violation of the First Amendment related to an inmate's placement in restricted custody after the inmate refused to serve prospectively as a prison informant. *Id.* The Second Circuit, however, specifically declined to address whether the inmate had a First Amendment right to refuse to give truthful information about a past event, the situation involved in this case. *Id.* at 93. Neither the Fourth Circuit, nor a district court in this Circuit, has followed *Burns*. *See Boyes v. Young*, No. 2:20-cv-00108, 2022 WL 4242842, at *9–10 (S.D. W. Va. Aug. 17, 2022).

(4th Cir. 2023). "That test allocates a prima facie burden to the plaintiff to show that his protected activity was a 'substantial or motivating factor' in the defendants' action." *Id.* "The burden then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same action in the absence of the plaintiff's protected activity." *Id.* Courts are skeptical of prisoner retaliation claims because "every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).

Were the court to have found that Plaintiff engaged in a constitutionally protected activity, Plaintiff's sworn allegations would have been sufficient to meet the prima facie burden under this framework. However, Rasnake and Dye provided affidavits stating that the charge was issued because they suspected Wilkins had been involved in the assault on an inmate by blocking the door. This was based upon their review of video footage and statements by confidential informants. Another officer explains that the "Max PRO video footage was reviewed by the Institutional Investigator, which revealed Wilkins as one of the inmates that entered cell B-343 before the altercation incident occurred." (Horne Aff. ¶ 5.) Thus, Rasnake was not the only officer to issue a charge to Wilkins for the July 21, 2023, incident. (*Id.* ¶ 7, Encl. A.) Wilkins' speculation about what certain video footage might show is insufficient to create a genuine issue of material fact. Moreover, the statement of a fellow inmate that Wilkins blocked the door is sufficient to show, by a preponderance of the evidence, that defendants would have charged Wilkins for misconduct even if Wilkins had not refused to cooperate with the investigation. Ultimately, the record shows that Wilkins was charged because the evidence collected at the time supported a conclusion that he was part of the attack. Thus, defendants

have established that they would have taken the same action in the absence of the alleged retaliation.

For these reasons, the court finds that defendants are entitled to summary judgment.

### C. Motion to Compel

Wilkins has filed a motion to compel the production of discovery by defendants. None of the information requested by Wilkins is relevant to the court's analysis of this summary judgment motion, which will be granted. Accordingly, the court will also deny the motion to compel.

## III. CONCLUSION

The court will issue an order granting defendants' motion for summary judgment, denying plaintiff's motion to compel, dismissing this case in its entirety, and removing the trial date from the court's calendar.

**ENTERED** this 24th day of August, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE